❑ Original    ❑ D[...]

CLERK'S OFFICE
A TRUE COPY
Jan 17, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Devices A-F, currently in law enforcement<br>custody, as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)    Case No.   25-M-318 (SCD) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____1-31-25_____ *(not to exceed 14 days)*

❑ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Stephen C. Dries_____.
*(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❑ for _____ days *(not to exceed 30)*   ❑ until, the facts justifying, the later specific date of _____.

Date and time issued:     1-17-25. 12:30 pm                *Stephen C. Dri[signature]*
                                                                                     *Judge's signature*

City and state:   Milwaukee, WI                          Honorable Stephen C. Dries, U.S. Magistrate Judge
                                                                                *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

## *Property to be Searched*

(1)     a black Apple iPhone in a clear case, seized from Killrain J. RANDOLPH during his arrest on December 12, 2024, and is currently being stored at the DEA Milwaukee District Office, 4725 West Electric Ave, West Milwaukee, Wisconsin (**Device A**);

(2)     a dark blue Apple iPhone not in a case, seized from Marces L. RANDOLPH during his arrest on December 12, 2024, and is currently being stored at the DEA Milwaukee District Office, 4725 West Electric Ave, West Milwaukee, Wisconsin (**Device B**);

(3)     a green Apple iPhone seized from Malcolm AUSTIN during his arrest on December 12, 2024, and is currently being stored at the DEA Milwaukee District Office, 4725 West Electric Ave, West Milwaukee, Wisconsin (**Device C**);

(4)     a black Apple iPhone seized from Curtis SOLOMON during his arrest on December 12, 2024, and is currently being stored at the DEA Milwaukee District Office, 4725 West Electric Ave, West Milwaukee, Wisconsin (**Device D**);

(5)     a black Apple iPhone with a black case seized from Curtis SOLOMON during his arrest on December 12, 2024, and is currently being stored at the DEA Milwaukee District Office, 4725 West Electric Ave, West Milwaukee, Wisconsin (**Device E**); and

(6)     an iPad in a black and yellow case with a yellow Transformers design on the back of the case that was recovered during the search of Room 220 of the La Quinta Inn, in Glendale Wisconsin on December 12, 2024, and is currently being stored at the DEA Milwaukee District Office, 4725 West Electric Ave, West Milwaukee, Wisconsin (**Device F**);

1

# ATTACHMENT B

## *Particular Things to be Seized*

1.  All records and information stored on the Devices, described in Attachment A that relate to violations of Title 18, United States Code, Sections 2118(b) or Title 21, United States Code, Section 846 & 841(a)(1) since January 1, 2024, including but not limited to the following:

   a. Any audio, video, and/or photographs regarding surveillance of any pharmacies, possession or distribution of controlled substances, and any communications between co-conspirators;

   b. Any evidence regarding travel from Texas or any other location to the Eastern District of Wisconsin, including maps, searches, any evidence of surveillance, construction, security systems, and/or burglary techniques;

   c. Any evidence regarding purchase of burglary tools including the saw, recipients or financial records showing the purchase of items used to commit burglaries

   d. Any drug ledgers, of any type, regarding types, amounts, and prices of controlled substance transactions as well as dates, places, and amounts of specific transactions and communications regarding the procurement or sale of controlled substances;

   e. All bank records, checks, credit card bills, account information, and other financial records; and

   f. All evidence of location information or GPS location data showing the Device's location related to the above-described crimes.

2

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records evidencing the use of the Internet Protocol address to communicate with using the internet including:

    a. records of Internet Protocol addresses used;

    b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data), any photographic form, and/or any memory card or other data storage device within or connected to the Devices.

3



CLERK'S OFFICE
A TRUE COPY
Jan 17, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
)
Devices A-F, currently in law enforcement )
custody, as further described in Attachment A )

Case No. 25-M-318 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

❐ property designed for use, intended for use, or used in committing a crime;

❐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846 & 841(a)(1); and 18 U.S.C. § 2118(b) | Conspiracy to possess with intent to distribute and distribute controlled substances; and Burglary of pharmacy to steal controlled substances. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

❐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

COLEMAN WILLIAMS  Digitally signed by COLEMAN WILLIAMS
Date: 2025.01.16 09:23:25 -06'00'

*Applicant's signature*

Coleman Williams, DEA SA

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date: ___1-17-25___

*Judge's signature*

City and state: ___Milwaukee, WI___         Honorable Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Laurie Kaufmann, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND INVESTIGATOR BACKGROUND

1. I make this affidavit in support of an application under Federal Rule of Criminal Procedure 41 for a search warrant authorizing the search of electronic devices that are currently in the custody of the DEA Milwaukee District Office, and the extraction of evidence from those electronic devices, as more fully described in Attachment B.

2. I am a Diversion Investigator with the Drug Enforcement Administration ("DEA"). I have been so employed since January 1989 and am currently assigned to the DEA Milwaukee District Office. As part of my duties as a DEA Diversion Investigator, I investigate criminal violations involving Title 21, United States Code, and Title 21, Code of Federal Regulations, Part 1300 et seq. In my capacity as a Diversion Investigator, I have conducted and participated in numerous investigations of practitioners, pharmacies and individuals involved in diversion, that is, the unlawful distribution and acquisition of pharmaceutical controlled substances, drug tampering, and pharmacy robberies. I am familiar with the usual methods of investigation, including but not limited to, conducting audits, the questioning of witnesses, the use of informants, undercover operations and the review of social media platforms and phone records for communication.

3. I have participated in complex investigations which involved violations of state and federal controlled substances laws including 18 U.S.C. § 2118 and 21 USC § 841(a)(1).

1

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers and witnesses, DEA records, and records and information received from other parties, such as pharmacists. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Based on the facts set forth in this affidavit, there is probable cause to believe that Killrain J. RANDOLPH (dob 06/16/1990), Marces L. RANDOLPH (dob 04/19/1989), Malcolm J. AUSTIN (dob 11/21/1987), and Curtis G. SOLOMON (dob 08/20/1991) committed a violation of Title 18, United States Code, Section 2118(b) (burglary of pharmacy to steal controlled substances) and violation of Title 21, United States Code, Section 846 & 841(a)(1) (conspiracy to possess with intent to distribute and distribute controlled substances) and that evidence and fruits of these crimes may be found in Devices A-F ("the Devices") as further described below and in Attachment A. The evidence and items to be seized from the Devices is more particularly described in Attachment B.

## PROPERTY TO BE SEARCHED

6.      The property to be searched is described herein:

   a.      a black Apple iPhone in a clear case, seized from Killrain J. RANDOLPH during his arrest on December 12, 2024, and is currently being stored at the DEA Milwaukee District Office, 4725 West Electric Ave, West Milwaukee, Wisconsin (**Device A**);

2

b.     a dark blue Apple iPhone not in a case, seized from Marces L. RANDOLPH during his arrest on December 12, 2024, and is currently being stored at the DEA Milwaukee District Office, 4725 West Electric Ave, West Milwaukee, Wisconsin (**Device B**);

c.     a green Apple iPhone seized from Malcolm AUSTIN during his arrest on December 12, 2024, and is currently being stored at the DEA Milwaukee District Office, 4725 West Electric Ave, West Milwaukee, Wisconsin (**Device C**);

d.     a black Apple iPhone seized from Curtis SOLOMON during his arrest on December 12, 2024, and is currently being stored at the DEA Milwaukee District Office, 4725 West Electric Ave, West Milwaukee, Wisconsin (**Device D**);

e.     a black Apple iPhone with a black case seized from Curtis SOLOMON during his arrest on December 12, 2024, and is currently being stored at the DEA Milwaukee District Office, 4725 West Electric Ave, West Milwaukee, Wisconsin (**Device E**); and

f.     an iPad in a black and yellow case with a yellow Transformers design on the back of the case that was recovered during the search of Room 220 of the La Quinta Inn, in Glendale Wisconsin on December 12, 2024, and is currently being stored at the DEA Milwaukee District Office, 4725 West Electric Ave, West Milwaukee, Wisconsin (**Device F**);

7.     The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

8.     In December of 2024, local authorities reached out to the DEA Milwaukee District Office regarding what appears to be a string of pharmacy burglaries resulting in the theft of significant amounts of controlled substances and attempted burglaries that

3

occurred in the Eastern District of Wisconsin and appear to be committed by the same group of individuals.

9. On December 10, 2024, Waupaca Hometown Pharmacy, located at 115 N. Western Avenue, Unit 8, in Waupaca, Wisconsin was burglarized. The investigation revealed that the burglars cut a hole through an exterior wall to enter the pharmacy. The burglars obtained 77 Schedule II controlled substance products, and 3 Schedule IV controlled substance products, at a cost to the pharmacy of approximately $18,568. The Waupaca Police Department identified two suspicious SUVs that were in the area of the pharmacy, including a Mitsubishi Outlander with an Arizona license plate rented by Killrain RANDOLPH and a Nissan Rouge with Texas license plates rented by someone identified, via a Facebook query, to be an acquaintance of RANDOLPH. A nationwide Flock camera search was conducted on these license plates and it was determined that both had traveled from Texas to Wisconsin.

10. On approximately December 11, 2024 or during the very early morning hours of December 12, 2024, a burglary was attempted at Kimberly Hometown Pharmacy, located at W2721 Brookhaven Drive in Buchanan, Wisconsin. The hole that was cut into the back of the building led to a stock room, not the pharmacy, and it appears at that point the burglars aborted their planned burglary of the pharmacy.

11. On December 12, 2024, Marshland Pharmacy, located at 700 Washington Street in Horicon, Wisconsin was burglarized. The investigation revealed that the burglars cut a hole in the back of the building to enter the pharmacy. Although the

4

burglars tripped an alarm in the pharmacy at approximately 4:01 a.m., the burglars obtained 44 Schedule II controlled substance products, 6 Schedule III controlled substance products, 10 Schedule IV controlled substance products, and 12 Schedule V controlled substance products, at a cost to the pharmacy of approximately $17,248. A Detective from the Waupaca Police Department noted that Flock cameras captured the suspect vehicles with the Arizona and Texas license plates around the pharmacy at the same time the burglary was occurring.

12. Continued monitoring of Flock cameras captured the Nissan Rogue later in the day on December 12, 2024, in Glendale, Wisconsin. The vehicle was subsequently located by Glendale Police Officers in the southside of the parking lot at the La Quinta Inn & Suites, located at 5423 N. Port Washington Road, Glendale. Glendale Police Officers approached the Nissan Rogue and cleared it. Another Glendale Officer then arrived in a marked squad and blocked the vehicle in and as she was doing so, she advised that she observed two black male subjects, one wearing a mustard-colored sweatsuit and one wearing a black parka with a fur hood who appeared to be walking around the corner, i.e., approaching the Nissan Rogue; however, immediately upon seeing her and the marked squad, the two black male subjects walked back inside the hotel. As officers entered the lobby of the hotel, the subject in the mustard-colored sweatsuit was observed on the second floor.

13. The front desk clerk at the hotel advised that the subject in the mustard-colored sweatsuit was associated with Room 220. Other officers were then notified of

5

this information and went to Room 220.  While standing outside of Room 220, officers heard voices coming from the room.  At this time, Glendale officers were also speaking on the phone and receiving information from the Waupaca Police Department and Glendale Lieutenant Hoffman received a still image of a suspect from the Waupaca pharmacy burglary, which matched a subject who was in the hotel lobby.  Officers then responded to the hotel lobby to make contact with this subject, who was subsequently identified as Killrain RANDOPH, (dob 6/16/1990), and he was detained while he was holding a black iPhone with a clear case in his right hand (**Device A**), and he was eventually then placed under arrest.

14.  A Glendale officer who was then reviewing hotel surveillance video, observed four subjects, including RANDOLPH, in the hallway together, and it appeared that one of the subjects had a firearm magazine potentially sticking out of his jeans pocket. At this point, the officers believed that there were three additional occupants inside room #220.  Officers then went to room #220, which was rented by Malcolm AUSTIN, and encountered two individuals, subsequently identified as Marces RANDOLPH, and Malcolm AUSTIN, both of whom were slightly argumentative about why officers were at the door.  Due to the belief that there were three occupants in the room and were known violent, potentially armed gang members, according to information relayed to them regarding the burglary suspects, officers entered the room to conduct a protective sweep and to locate the third individual. Upon entry, officers observed the toilet full of medication bottle labels that appeared to be removed from medication bottles that were

6

also present in the hotel room, and a fentanyl packaging label through a pillowcase. At this time, Marces RANDOLPH and AUSTIN were placed under arrest due to the large amount of narcotics. At this time, officers stayed in the room to wait for a state search warrant to be prepared and signed.

15. A Glendale officer then took AUSTIN to his squad car and secured him in the backseat. After doing so, a Whitefish Bay Police Officer advised that officer that he had observed a black male subject wearing a mustard-colored sweatsuit get into the backseat of a Ford SUV near the entrance. The subject wearing the mustard-colored sweatsuit, later identified as Curtis G SOLOMON (dob: 8/20/1989), was then detained and subsequently taken into custody by a Glendale police officer. Officers obtained state search warrants for the two vehicles recovered, i.e., the Nissan Rogue and the Mitsubishi Outlander, which revealed the following: a Stihl brand concrete saw and a Dewalt carrying bag with unknown tools in it, believed to be burglary tools.

16. Officers obtained a state search warrant to search Room #220 and recovered fentanyl strips, a Schedule II controlled substance as well as numerous empty medication bottles, many that still had stickers and labels indicating that they were from the Marshland Pharmacy. All the medication bottles recovered from the hotel room were identified by Marshland Pharmacy as being taken during the above-described burglary. The fentanyl strips that were recovered were not taken from the Marshland Pharmacy. During the search of room #220 officers recovered **Device F**, which was sitting on top of one of the beds.

7

17. During the arrests, **Device A** was seized from Killrain RANDOLPH, who was holding it in his right hand when he was arrested. **Device B** was recovered from the front left pants pocket of Marces RANDOLPH when he was searched subsequent to arrest. **Device C** was recovered and seized from the back pants pocket of Malcolm AUSTIN when he was searched subsequent to arrest. **Devices D and E** were seized from Curtis SOLOMON's person when he was searched subsequent to arrest. **Device F** was recovered during the search of Room #220 conducted on December 12, 2024, and was in the custody of the Glendale Police Department until January 14, 2025, when your affiant transferred **Device F** to the DEA Milwaukee District Office. The Glendale Police Department seized **Devices A-E** and transferred them to the Horicon Police Department on December 13, 2024. Officers and agents with the Horicon Police Department did not obtain state search warrants for **Devices A-E**, and your affiant retrieved **Devices A-E** from the Horicon Police Department on January 10, 2025, and transferred them to the DEA Milwaukee District Office.

18. Case agents further discovered that there were two additional pharmacy burglaries in the Eastern District of Wisconsin in 2024 in which the burglars entered the pharmacy by cutting a hole in the building. On April 13, 2024, Peshtigo Hometown Pharmacy, located at 960 Frontage Road in Peshtigo, Wisconsin was burglarized in this manner and the burglars obtained 72 Schedule II controlled substance products, and 2 Schedule III controlled substance products, at a cost to the pharmacy of approximately $37,732. A witness indicated that she observed two SUVs with Texas license plates

8

driving in the area of the pharmacy around 12:15 a.m. that morning. On November 8, 2024, Nicolet Pharmacy, located at 15481 Commercial Road, Ste A in Lakewood, Wisconsin was also burglarized in this manner, and the burglars obtained 49 Schedule II controlled substance products, at a cost to the pharmacy of approximately $22,214. As of today's date, these two pharmacy burglaries resulting in the theft of controlled substances remain unsolved.

19. Based on my training and experience, your affiant is aware that individuals involved in a conspiracy to possess with intent to distribute controlled substances frequently use cellular telephones to maintain contact and arrange transactions with their customers. Your affiant has also found it very common for individuals involved in the planning and commission of crimes to use their cellular telephones to communicate orally or via electronic message.

17. Based upon the facts described above, to include my knowledge of and experience regarding the use of electronic devices by those engaged in criminal activity, including planning burglaries and involvement in a conspiracy to possess with intent to distribute and distribute controlled substances, there is probable cause to believe that the search of the Devices, more fully described in Attachment A, will reveal evidence and fruits of crimes, namely violations of Title 18, United States Code, Section 2818 and Title 21, United States Code, Section 846 and 841(a)(1).

9

<u>**TECHNICAL TERMS**</u>

18.     Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.     Cellular telephone:  A cellular telephone is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system (GPS) technology for determining the location of the device.

    b.     Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic films.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

    c.     Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can

10

also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (GPS) consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system (GPS) technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs

11

called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g.    Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h.    IP Address: An Internet Protocol address (IP address) is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i.    Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

19. Based on my training, experience, and research, I know that the Devices have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA, and all have the ability to access the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

12

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

21.     As explained below, information stored within a cell phone or iPad may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, the information stored within a cell phone can indicate who has used or controlled the cell phone.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, contacts lists, instant messaging logs, and communications (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the cell phone at a relevant time.  Further, such stored electronic data can show how and when the cell phone and its related account was accessed or used.  Such "timeline" information allows investigators to understand the chronological context of cell phone access, use, and events relating to the crime under investigation.  This "timeline" information may tend to either inculpate or exculpate the cell phone account owner.  Additionally, information stored within a cell phone may indicate the geographic location of the cell phone and user at a particular time (e.g., location integrated into an image or video sent via email or text

13

message to include both metadata and the physical location displayed in an image or video). Last, stored electronic data may provide relevant insight into the cell phone owner's state of mind as it relates to the offense under investigation. For example, information in the cell phone may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement). Unless this data is destroyed, by breaking the cell phone itself or by a program that deletes or over-writes the data contained within the cell phone, such data will remain stored within the cell phone or iPad indefinitely.

22. *Forensic evidence.* As further described in Attachment B, this application seeks permission to search for evidence that might be found on the Devices in whatever form it may be found and to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how each Device was used, the purpose of its use, who used it, and when. Thus, the warrant for which I am applying would authorize the seizure of a cellphone or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B). Your affiant submits that there is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

14

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

### CONCLUSION

33. Based on the above information provided in this affidavit, I believe there is probable cause that the Devices contain evidence of violations of Title 18, United States Code, Section 2118(b), and Title 21, USC, §§ 841(a)(1) & 846 (conspiracy to possess with intent to distribute and distribute controlled substances). I respectfully request a search warrant to be authorized for the search of the Devices, described in Attachment A, to recover and seize evidence described in Attachment B.

15

I swear under penalty of perjury that the foregoing is true and correct.

LAURIE
KAUFMANN

Digitally signed by LAURIE KAUFMANN
Date: 2025.01.16 14:58:22 -06'00'

Laurie Kaufmann
Diversion Investigator, Drug Enforcement Administration

Sworn by the affiant in accordance with the requirements
of Fed. R. Crim. P. 4.1 by telephone on this _17_ day of January, 2025.

HONORABLE STEPHEN C. DRIES
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF WISCONSIN

16

## ATTACHMENT A
### *Property to be Searched*

(1)     a black Apple iPhone in a clear case, seized from Killrain J. RANDOLPH during his arrest on December 12, 2024, and is currently being stored at the DEA Milwaukee District Office, 4725 West Electric Ave, West Milwaukee, Wisconsin (**Device A**);

(2)     a dark blue Apple iPhone not in a case, seized from Marces L. RANDOLPH during his arrest on December 12, 2024, and is currently being stored at the DEA Milwaukee District Office, 4725 West Electric Ave, West Milwaukee, Wisconsin (**Device B**);

(3)     a green Apple iPhone seized from Malcolm AUSTIN during his arrest on December 12, 2024, and is currently being stored at the DEA Milwaukee District Office, 4725 West Electric Ave, West Milwaukee, Wisconsin (**Device C**);

(4)     a black Apple iPhone seized from Curtis SOLOMON during his arrest on December 12, 2024, and is currently being stored at the DEA Milwaukee District Office, 4725 West Electric Ave, West Milwaukee, Wisconsin (**Device D**);

(5)     a black Apple iPhone with a black case seized from Curtis SOLOMON during his arrest on December 12, 2024, and is currently being stored at the DEA Milwaukee District Office, 4725 West Electric Ave, West Milwaukee, Wisconsin (**Device E**); and

(6)     an iPad in a black and yellow case with a yellow Transformers design on the back of the case that was recovered during the search of Room 220 of the La Quinta Inn, in Glendale Wisconsin on December 12, 2024, and is currently being stored at the DEA Milwaukee District Office, 4725 West Electric Ave, West Milwaukee, Wisconsin (**Device F**);

17

## ATTACHMENT B
### *Particular Things to be Seized*

1.      All records and information stored on the Devices, described in Attachment A that relate to violations of Title 18, United States Code, Sections 2118(b) or Title 21, United States Code, Section 846 & 841(a)(1) since January 1, 2024, including but not limited to the following:

   a. Any audio, video, and/or photographs regarding surveillance of any pharmacies, possession or distribution of controlled substances, and any communications between co-conspirators;

   b. Any evidence regarding travel from Texas or any other location to the Eastern District of Wisconsin, including maps, searches, any evidence of surveillance, construction, security systems, and/or burglary techniques;

   c. Any evidence regarding purchase of burglary tools including the saw, recipients or financial records showing the purchase of items used to commit burglaries

   d. Any drug ledgers, of any type, regarding types, amounts, and prices of controlled substance transactions as well as dates, places, and amounts of specific transactions and communications regarding the procurement or sale of controlled substances;

   e. All bank records, checks, credit card bills, account information, and other financial records; and

   f. All evidence of location information or GPS location data showing the Device's location related to the above-described crimes.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      Records evidencing the use of the Internet Protocol address to communicate with using the internet including:

a. records of Internet Protocol addresses used;

b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data), any photographic form, and/or any memory card or other data storage device within or connected to the Devices.